UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AARON FELLOWS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:22-cv-01059-JPH-KMB |
| | ) |
| PRETORIUS Warden, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Petitioner Aaron Fellows, an Indiana prisoner, filed this writ of habeas corpus to challenge a prison disciplinary proceeding identified as Case No. IYC 21-12-0046. For the reasons explained in this Order, Mr. Fellows's habeas petition must be **denied.**

### I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass.*

1

*Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974).

## II.   The Disciplinary Proceeding

On December 2, 2021, Officer M. Raban wrote a Report of Conduct ("Conduct Report") charging Mr. Fellows with violating Indiana Department of Correction ("IDOC") Adult Disciplinary Code Number A-121, Possession of Cellular Device. Dkt. 11-1. The Conduct Report states:

> On December 2, 2021, at 12:23pm, I, M. Raban, received information from a confidential source that Offender Fellows, Aaron #212848 had an active Facebook account. Upon further investigating, I was able to locate Offender Fellows's Facebook page "Aaron Flocka Fellows." On December 1, 2021, at 10:42pm, Offender Fellows uploaded a video of himself inside a two-man cell. Offender Fellows has also made multiple posts to his social media account over the last month. Based on the information we were able to collect from Offender Fellows's Facebook page, it is clear that Offender Fellows has utilized a cellular device allowing him to maintain his social media account.

Dkt. 11-1 (cleaned up).

Mr. Fellows was notified of the charge when he received the Conduct Report and the Notice of Disciplinary Hearing ("Screening Report") on December 7, 2021. *Id.*; dkt. 11-2. He pleaded not guilty and initially did not request any witnesses or evidence during screening. Dkt. 11-2. Then on December 15, 2021, Mr. Fellows requested the relevant video that was posted to his Facebook account, the photographs of his cell, and to call his mother as a witness.[1] Dkt.

---

[1] The relevant video and pictures were included in the record for the Court's *in camera* review. *See* dkt. 12 (sealed Exhibit A-1); *see also* dkt. 13 (notice of manual filing of video).

2

11-4. Mr. Fellows intended to ask his mother if she maintained control over his Facebook page and posted pictures and videos on social media. *Id.*

Mr. Fellows's disciplinary hearing was held on January 6, 2022. Dkt. 11-5. Mr. Fellows again pleaded not guilty. *Id.* The hearing officer recorded Mr. Fellows's statement as: "I never had possession of a cellular device or an active Facebook page. It's all old photos." *Id.* (cleaned up). Based on the Conduct Report, photos, and confidential video, dkts. 11-1, 11-5, and 13, the hearing officer found Mr. Fellows guilty. Dkt. 11-5. The hearing officer sanctioned Mr. Fellows with a suspended ninety-day loss of credit time, a suspended credit class demotion, and other sanctions that affect his custody. *Id.* These suspended sanctions were subsequently imposed in Case No. IYC 21-12-120. Dkt. 11 at 4 (citing dkt. 11-12).

Mr. Fellows appealed his conviction to the Facility Head and the Final Reviewing Authority. Dkts. 11-6 and 11-7. His appeals were denied. *Id.* Subsequently, Mr. Fellows brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 1.

---

Mr. Fellows's request to call his mother as a witness was denied as irrelevant because it was determined that the video and pictures were taken inside Plainfield Correctional Facility where Mr. Fellows was located at the time of the offense in this case, not older pictures taken four years before at Mr. Fellows's previous location at Wabash Valley Correctional Facility, as he contends. Dkt. 11-4; dkt. 22 at 2 ("Fellows intended for his mother . . . to be his witness to corroborate [] his story that the photos and videos are all old and they were taken 4 years ago at Wabash and his mother uploads random photos of his Facebook page which she runs and operates.").

3

### III.     Analysis

The Court construes Mr. Fellows's petition to assert six claims.[2] Dkt. 1. First, the prison violated several of its policies. *Id.* at 3–4, 6–8. Second, the hearing officer failed to establish the reliability of testimony from a confidential informant. *Id.* at 3. Third, the hearing officer violated his due process rights by convicting Mr. Fellows without sufficient evidence. *Id.* at 3, 6. Fourth, the hearing officer violated his due process rights by failing to provide an adequate written statement to support Mr. Fellows's conviction. *Id.* at 3–4, 7. Fifth, the hearing officer violated his due process rights by imposing unduly severe sanctions, rather than progressive discipline. *Id.* at 4, 7–8. Sixth, the hearing officer violated his due process rights by denying Mr. Fellows's request to call his mother as a witness. *Id.* at 7.

**A. Prison Policies**

Mr. Fellows argues that prison officials violated prison policies related to verifying a confidential informant's reliability and documenting hearing reports, conduct reports, and sanction rationales. *Id.* at 3–4, 6–8.[3] Respondent argues

---

[2] While Mr. Fellows's claims in his petition appear to be solely based on policy violations, he clarifies in his reply that his claims are also based on alleged due process violations. Dkt. 22 at 2–4 (Mr. Fellows asserting due process arguments based on the reliability of informants, sufficiency of the evidence, advance written notice, and denial of witnesses). Normally, arguments first made or developed in a reply brief are waived. *E.g., Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019). But given Mr. Fellows's *pro se* status and since Respondent sufficiently addressed the due process implications of the petition, the Court proceeds under the understanding that his claims are premised on his constitutional due process rights.

[3] Mr. Fellows mentions several errors in the Conduct Report including an ambiguous notification date that he alleges staff was required to correct under the prison's policy. Dkt. 1 at 4, 6 (Mr. Fellows asserting that "it wasn't clear what date [sic] signed, it wasn't clear, legible or understand[able]. Looks like 12/12/22 which would not be in the 24

4

that federal habeas relief is not available for violations of prison policies. Dkt. 11 at 7.

Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *cf. Estelle v. McGuire*, 502 U.S. 62, 68 n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

Accordingly, Mr. Fellows's claims based on prison officials' alleged violations of state policies and procedure are **denied**.

### B. Reliability of Confidential Informant

Mr. Fellows contends that the hearing officer based his decision in part on information from an unreliable confidential informant. Dkt. 1 at 3, 6; dkt. 22 at 4. "In order to guarantee the inmate's right to a fair hearing, . . . a prison disciplinary board must accompany the use of a confidential informant's testimony with an indication that the informant is reliable." *Whitford v. Boglino*,

---

hours policy."). But regardless of when the Conduct Report was dated, Mr. Fellows was given notice of his charge on December 7, 2021, dkt. 11-2, which was long before his January 6, 2022 disciplinary hearing, dkt. 11-5. Mr. Fellows's notification of his charge thus was made with more than 24 hours' advance notice, which is all the due process clause requires in this context. *Wolff*, 418 U.S. at 564.

63 F.3d 527, 535 (7th Cir. 1995). Respondent argues only that any error in failing to properly establish the reliability of the informant was harmless because the hearing officer relied on other evidence that was reliable. Dkt. 11 at 9. An error is harmless if it caused "no prejudice" to the petitioner. *Jones v. Cross*, 637 F.3d 841, 846–47 (7th Cir. 2011).

The record shows that the confidential informant's role was limited to initially informing Officer Raban that Mr. Fellows had an active Facebook account. Dkt. 11-1. Then, in finding Mr. Fellows guilty, the hearing officer listed as the "Reason for decision" the "staff reports, evidence: photos, and confidential video." Dkt. 11-5. *Id.* The record therefore shows that the confidential informant played little or no role in the hearing officer's decision. *See Gates v. Brown*, No. 2:14-cv-245-JMS-WGH, 2015 U.S. Dist. LEXIS 139598, at *9 (S.D. Ind. Oct. 14, 2015) (holding that a failure to establish a confidential informant's reliability is harmless where the hearing officer relied on other evidence, a conduct report and video/audio records, to support its decision).

Moreover, the independent evidence that the hearing officer relied on was strong. The report of conduct shows that Officer Raban independently confirmed the confidential informant's information that Mr. Fellows had an active Facebook account. Dkt. 11-1. The hearing officer also reviewed recent posts on that Facebook account that included photos and a video showing Mr. Fellows in a two-man cell at Plainfield. *Id.*; *see also* dkt. 35-1 (Warden attesting that the photos and the videos depict areas at Plainfield). Since visitors cannot access

6

those cells, it was not hard for the hearing officer to conclude that Mr. Fellows had unlawfully possessed a cellular device. Dkt. 11-1; dkt. 35-1.

Because of that strong evidence that the hearing officer expressly relied on, Mr. Fellows suffered "no prejudice" from the confidential informant's minimal connection to his disciplinary proceeding. *Jones*, 637 F.3d at 846–47. Any error was therefore harmless. *See id.*; *Gates*, 2015 U.S. Dist. LEXIS 139598, at *9.

### C. Sufficiency of the Evidence

Mr. Fellows next argues that there was insufficient evidence for the hearing officer to find him guilty. Dkt. 1 at 3, 6.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). Further, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56; *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing

7

officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney,* 723 F. App'x at 348 (citing *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000)). A conduct report "alone" may establish the "some evidence" requirement. *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999).

The IDOC defines Code A-121 as "[u]nauthorized use or possession of any cellular telephone or other wireless or cellular communications device." Dkt. 11-8 at 3. The IDOC further defines possession as follows:

> On one's person, in one's quarters, in one's locker or under one's physical control. For the purposes of these procedures, an offender is presumed to be responsible for any property, prohibited property or contraband that is located on their person, within their cell or within areas of their housing, work, educational or vocational assignment that are under their control. Areas under an offender's control include, *but are not limited to:* the door track, window ledge, ventilation unit, plumbing and the offender's desk, cabinet/locker, shelving, storage area, bed and bedding materials in his/her housing assignment and the desk, cubicle, work station and locker in his/her work, educational or vocational assignment.

Dkt. 11-9 at 6 (emphasis added).

Here, the Conduct Report states that Officer Raban found a Facebook account under Mr. Fellows's name and reviewed its contents. Dkt. 11-1. That review showed recent posts including photos and a video depicting Mr. Fellows in a two-man cell at Plainfield. *Id.*; *see also* dkt. 35-1 (Warden attesting that the photos and the videos depict areas at Plainfield). At the time of these posts, the charge, and the underlying disciplinary proceeding, Mr. Fellows was incarcerated at Plainfield. Dkt. 35 at 1. Based on these findings, Officer Raban concluded that Mr. Fellows used a cellular or a wireless communication device to maintain his

8

social media account and subsequently issued the Conduct Report charging him with violation of Code A-121. Dkt. 11-1. Because the hearing officer relied on the Conduct Report and reviewed the photos and the video depicting Mr. Fellows in a two-man cell at Plainfield, the hearing officer had sufficient evidence to convict Mr. Fellows. *McPherson*, 188 F.3d at 786 (A conduct report "alone" may establish the "some evidence" requirement).

To the extent that Mr. Fellows argues there is insufficient evidence that he physically possessed the device because a cellphone was not confiscated, his argument is unavailing. Dkt. 22 at 3. There is no element in the code that staff must first confiscate a cellphone before a prisoner may be charged with violating Code A-121. Rather, Code A-121 merely requires evidence of "unauthorized use or possession" of a cellphone. Dkt. 11-8 at 3. The evidence therefore allowed the hearing officer to conclude that Mr. Fellows used or possessed a cellular device. Dkt. 11-9 at 6 (defining possession, in relevant part, as "under one's physical control."); *see also Austin v. Pazera*, 779 F.3d 437, 439 (7th Cir. 2015) (noting that hearing officer may convict prisoner of possession when there is evidence that the prisoner had "control of an item (implying ready access and intended use actual or contingent) without physical possession").

The Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb*, 224 F.3d at 652). Since the record contains "some evidence" that Mr. Fellows possessed a phone, he is not entitled to relief on this claim.

### D. Adequate Written Statement

Mr. Fellows argues that the hearing officer violated his due process rights by failing to provide him with an adequate written statement to support his conviction. Dkt. 1 at 3–4, 7. Specifically, he claims that the hearing officer used "generic language" and failed to provide sufficient detail about the evidence that he relied on. *Id.* Respondent argues that Mr. Fellows misrepresents the policy requirements and that the hearing officer's notation that he relied on staff reports, the pictures, and the video is not ambiguous. Dkt. 11 at 9–10. In his reply, Mr. Fellows claims that the Hearing Report is inadequate because the hearing officer did not adequately explain why he chose to rely on the other evidence instead of Mr. Fellows's testimony. Dkt. 22 at 2–3.

"Due process requires that an inmate subject to disciplinary action is provided a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions." *Scruggs*, 485 F.3d at 941 (internal quotation omitted). The written statement requirement is not "onerous," as the statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* "Ordinarily a mere conclusion that the prisoner is guilty will not satisfy this requirement." *Saenz v. Young*, 811 F.2d 1172, 1174 (7th Cir. 1987). But when a case is "particularly straightforward," the hearing officer need "only to set forth the evidentiary basis and reasoning for the decision." *Jemison v. Knight,* 244 F. App'x 39, 42 (7th Cir. 2007).

Here, the Hearing Report indicates that the hearing officer relied on "staff reports, evidence: photos, [and] confidential video" and that the sanctions were

10

warranted due to the "seriousness" of the offense. Dkt. 11-5. Due process does not require the hearing officer to explain why he found other evidence or witnesses more credible than the prisoner's statement. *Jemison*, 244 F. App'x. at 42 (holding that the hearing officer's statement "that it relied on staff reports and [the inmate's] own statement at the hearing" was sufficient because the hearing officer "had only to weigh [the officer's] statement against [the inmate's]"); *see also Reed v. Brown*, No. 2:16-cv-00034-WTL-MJD, 2017 U.S. Dist. LEXIS 21712, at *9–10 (S.D. Ind. Feb. 16, 2017) (finding that the hearing officer was not required to explain why he believed written reports over the prisoner's statement in addition to specifying the evidence that hearing officer relied on).

The purpose of a written statement in prison disciplinary proceedings is to "ensure both administrative accountability and meaningful review." *Scruggs*, 485 F.3d at 941. The Court finds that the hearing officer's written statement sufficiently stated the evidentiary basis and reasoning for the guilty finding. Accordingly, Mr. Fellows is not entitled to relief on this ground.

### E. Severity of Sanctions

Mr. Fellows also contends that the hearing officer violated his due process rights because the sanctions were too severe, he was not given "progressive discipline," and this was his first Class A offense. Dkt. 1 at 4, 7–8. Respondent counters that Mr. Fellows's sanctions comply with state law limits. Dkt. 11 at 11. Mr. Fellows does not address this claim in his reply. Dkt. 22.

A court may not review habeas relief claims alleging harsh sanctions when the sanctions comply with statutory guidelines. *Lauderdale-El v. Smith*, No. 2-

11

19-cv-53-JPH-DLP, 2020 U.S. Dist. LEXIS 176681, at *13 (S.D. Ind. Sept. 25, 2020) (applying *Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")).

The Court has reviewed the IDOC's sanctions for an A-121 offense and finds that Mr. Fellows's sanctions comply with these guidelines. Dkt. 11-9 at 40-41 (IDOC's regulations for an A-121 offense permit maximum sanctions of the deprivation of six months of credit time, a credit demotion, and other lesser sanctions that do not concern custody); *see Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997) ("[A] federal court will not normally review a state sentencing determination which, as here, falls within the statutory limit," unless the sentence violates the Eighth Amendment by being an "extreme" punishment that is "grossly disproportionate" to the crime.). Accordingly, Mr. Fellows is not entitled to relief on this claim.

### F. Denial of Witness

Finally, Mr. Fellows alleges that the hearing officer violated his due process rights by denying him the opportunity to present his mother as a witness. Dkt. 1 at 7. Respondent argues this witness's testimony was not relevant because 1) staff determined that the photos were taken inside Plainfield and 2) Mr. Fellows's mother could not dispute this determination because visitors cannot access the area where the photos were taken. Dkt. 11 at 3; *see also* dkt. 35-1 (Warden verifying that the photos were taken at Plainfield and that visitors could not

12

access the area where the photos were taken). In his reply, Mr. Fellows contends that his mother's testimony "may have helped in his defense" because she would have testified "to personal knowledge of the incident" that the photos were taken four years ago at Wabash Valley, and that she uploads the photos on his Facebook page. Dkt. 22 at 2.

A prisoner's right to call witnesses is limited to "material exculpatory evidence." *Jones*, 637 F.3d at 847. Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). The right is further limited in that "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

Mr. Fellows's argument that his mother's testimony could create a reasonable probability of a different result is unpersuasive given the Warden's testimony that the photos were taken inside a cell at Plainfield where Mr. Fellows was incarcerated. Dkt. 11-1 (noting that the photos of Mr. Fellows were taken "inside a two-man cell"); dkt. 35-1. Mr. Fellows's mother could not dispute that the photos were from Plainfield because visitors cannot access inmates' cells in that facility. Dkt. 35-1 at 1. Thus, any testimony about where the photos were taken would not be within her personal knowledge. Moreover, testimony that she updates Mr. Fellows's social media page would not exculpate Mr. Fellows because it does not undermine evidence that he used a cellular device at Plainfield to take photos and to record a video from his cell. Therefore, her

13

testimony is neither material nor exculpatory. Accordingly, Mr. Fellows's due process rights were not violated, and he is not entitled to relief on this claim.

## IV.     Conclusion

For the reasons stated above, Mr. Fellows is not entitled to habeas corpus relief under 28 U.S.C. § 2254. Accordingly, Mr. Fellows's petition for a writ of habeas corpus is **denied,** and the action is **dismissed with prejudice**.

Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 5/30/2024

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

AARON FELLOWS
212848
WABASH VALLEY – CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Monika P. Talbot
INDIANA ATTORNEY GENERAL
monika.talbot@atg.in.gov